Thank you, Your Honor. May it please the Court, my name is Dale Amato. I represent Appellant Employers Insurance Company of Wausau, who I will refer to today as Wausau. I'd like to reserve two minutes of my time for rebuttal, please, and thank the Court for its generous extension of the oral argument. We hope everyone is doing better. Thank you very much, I appreciate that, Your Honor. As I was preparing for oral argument, I was looking for a couple of, a phrase or two that would, that would support the District Court's judgment, why the District Court's judgment against Wausau should be reversed. Two came to mind, common sense is one of them, and the other one is food truck case, which I'd like to start off with. This case, as we see it, is controlled by American states versus travelers. That's, that's what I will call the food truck case, as we are analogous to this case, in the sense that you had a CGL policy and an auto policy, both covering what was a food truck, which was a piece of mobile equipment. That loss arose out of a splashing of the hot oil on the victim in the back, the plaintiff in the back, while the food truck was on the road making evasive, evasive actions. Dispute between the two carriers, the auto carrier travelers, arose, who was to pay. American states paid for everything, defense and indemnity, sought contribution from travelers. In that case, the Court of Appeal determined that you have to look to the core functional identity of the unit that's, that's involved. In this, in the food truck case, it was a mobile kitchen. That mobile kitchen, while on wheels, while uses the platform of a vehicle to go to and from its, its place where it serves food, is the core functional identity is really to serve food at a stationary location. The same is, and that's what the court said, you have to look to when you're looking to complementary type insurance policies, where you have an auto policy that covers transportation risks or auto risks, and you have a CGL policy, type policy, that covers operations or construction risks. In this case, you look to the core functional identity. That case relied on Alpine versus truck was outfitted with a scissors lift, lifted people and equipment from high to low. But don't we have to look at the specific language of the insurance contract here? Well, two things. Number one, the specific language of the insurance contract certainly we look at, but the court's job in terms of, in terms of disputes between insurance carriers on an equitable contribution matters to do equity and do justice. Yes, we look at... But the California Supreme Court told us that we were supposed to look at insurance contracts and apply general contract law principles. We do look at general contract law principles and we do look at policies. If you do look at these policies, if you're looking at the complementary policies here, Your Honor, you've got a WASA policy that covers transportation risks and excludes operation risks. It also excludes subsidence, right? I'm sorry? It excludes anything that was contributed to or aggravated by subsidence. That's the Lexington policy and yes, it has a subsidence exclusion, which we don't believe applies in this particular case. Maybe you want to start with that. Yeah, yes, Your Honor. The District Court applied the subsidence exclusion in a very, I want to say, kind of difficult manner, if you will. I mean, it's strained. It's a strained matter. You have a subsidence exclusion that says the Lexington policy doesn't cover for losses that involve cave-in, soil subsidence, soils movement, and the things like that. So does the plain language doesn't, in your view, the plain language of the exception doesn't cover it? I don't believe the plain language with this exception covers this particular loss. Because it says any type of earth movement. Well, I think what the District Court was looking at was the effect, there's a cause and effect analysis here. The cause of what, the cause of this loss was essentially the over, the tipping of the unit based on the, based on the weight of the concrete that was in the pump when it was, when the boom was extended past its tipping point, past the center of gravity, that caused, that caused the foot or the outrigger foot to slip off of its square pad and knifing into the soil. The effect of that was something knifing into the soil. So the soil, I think what the Cal OSHA, what the report said was that the soil wouldn't bear the weight of that leg. And so it knifed into the soil and the boom fell. The Cal OSHA report did say that. It also said that the cause of the tipping of the unit was because of the extension of the boom that was heavy at the, was top-heavy at the top with wet concrete, causing the unit to slip off of the the cribbing and the, and the leg to, and to knife into the soil. So, pardon me counsel, can I ask a question? Yes, your honor. Is your point that the outrigger, when it slipped off its pad, compressed the soil and the soil did not start subsiding, but it was the pressure of the outrigger which moved the soil rather than the subsidence of the soil by itself that descended the outrigger? Your honor, I would agree with that and, and, and here's why, is because... Did you argue that? Yes, we did. Do you have any evidence, do you have any evidence in the record that that was the chain of causation? You have evidence in the record that Terry Seville, who was the Cal OSHA safety engineer, your honor, testified during the, during the DRA trial that it was... That's the state law action, or is that this action? That was a state court action, although that evidence was used in the, in the summary judgment motion. I think what we did in the summary judgment motion was, was we attached the, and used the transcript of the two-day DRA trial. And Mr. Seville had said, to answer that question, your honor, that there was a hundred percent certainty, not just a likelihood, that the loss would not have occurred if the boom was not extended too far away from the pumper base. But what did it say about the soil and the soil movement? I guess, what evidence did WASOP put on that the, the soil, it wasn't caused by, or contributed to, or aggravated by soil movement? Well, I think in this case, your honor, it's important to note that the burden is on the, on the other foot. The summary judgment, and they put in evidence of the Cal OSHA report that there was soil movement. And so, it's, the burden then is on the party opposing summary judgment to create a genuine issue of material fact. So my question is, what evidence did WASOP put into the record relating to the soil movement? The evidence in the record was the Cal OSHA report. The evidence in the record was the transcript from the DRA trial, which included Mr. Phil's comments, just as I said. But doesn't that sort of cut against you? Not necessarily, your honor. I mean, are you saying that the inference from that is, that we're supposed, that that would be an inference in your favor? I think that that isn't a big inference. Because it doesn't, it doesn't say what you would want. It doesn't say that, it doesn't meet the causation result that you're trying to achieve, right? Specifically. Well, the causation result that's trying to be achieved is actually Lexington's causation result. They have to prove conclusively that the, that the exclusion applies. Since it's an exclusion, it's going to be drawn narrowly and interpreted narrowly against Lexington. All right, but then you didn't put any evidence that it has to causation. You're just saying it's the report. That the report, are you saying the report doesn't meet their burden, or what? I believe the report doesn't meet their burden for summary judgment standards. Summary judgment standards, you need, you know, admissible, especially in this case, expert type evidence that there's a soil subsidence. Now, it's undisputed that it hadn't been turned on yet, right? I'm sorry? The pump hadn't been turned on, right? Not necessarily true. The pump, at the time of the loss, the pump was not operating. However... Okay, so that's undisputed. That is undisputed. The District Court correctly, correctly found that the, that the movement of the boom, in order to extend it to pour the next, to the next concrete pumping, or pour the next load, was preparatory. Preparatory and incidental. Or arising out of the use of the pump. In fact, if you don't have the boom, you don't need the pump. Because the whole unit acts together as a pump pumps the concrete through the tube that puts it to far flung places, either high or far flung. So without the boom, there's really no reason for the pump whatsoever. So they work in concert. And I think the court, District Court got that point right, is that it was preparatory, it was arising out of the use of the pump. So to get where you want to go, do you have to kind of show an intersection between the two policies? That one, that, that there's a coverage, there's some cross-section, if you were drawing Venn diagrams, that there would be an intersection of coverage? You know, there's not an intersection of coverage. There's a complementary, I guess, the coverage is complementary. You've got the Wausau policy that excludes coverage for operations. Well, but you can have situations where both policies are primary as to a particular loss. And we don't exactly have that here. I would say we do not have that here. We have complementary policies. But then you can have some, if there's an ambiguity, I guess, there would be a cross-section that, but do we have that here? I don't believe we have an ambiguity in the policies with respect to the mobile equipment versus the transportation versus the construction risk. If there's an ambiguity in the policy, it's with Lexington subsidence exclusion, whether or not it covers this type of loss. But with respect to... But what's the ambiguity, pardon me, what, how do you see the ambiguity? Well, there's no question here the ground was moved before the accident occurred. Is it your position that soil movement as used in the policy is, means only soil movement which occurs spontaneously and without the compression factor of the slipping outrigger? Your Honor, in answering that, I would refer you back to the Wyatt versus Northwestern case that we cited in our brief, where the... I guess, is that, can you say yes or no on that to his answer, what, his question? In this case, there is the caving in, the compression that, I guess if you will, of the soil was caused by something else acting upon it, not necessarily the soil. So, pardon me, sir, can you answer this question? Is it your position that the exclusion applies only to spontaneously subsiding soil and does not apply to soil which is compressed by an outside force? That is my position, Your Honor. Well, thank you. Okay, so you're at three minutes and I, just to give you an alert. Thank you, Your Honor. Thank you, Your Honor. And just to follow up that, that, that thread of Techepea, the Wyatt versus Northwestern case really speaks to that and it found that the subsidence exclusion could not be intended to exclude a claim of contractor negligence where something struck the soil and that, then that soil subsided. You've got to look to see what the facts are. In this case, you've got a soil subsidence exclusion that talks about caving in or slipping, not necessarily something that's acting upon the soil in terms of the cause and effect. I can think of a compression argument for Judge Bay is that if a meteor comes down and hits in the desert and after you take the meteor out, you've got a big giant hole in the ground, you're not going to say that you have soil subsidence there. You've got a compression of the soil, but that's not subsidence of the soil. That's something heavy acting upon the soil as opposed to the soil giving way itself. I see that I have two minutes left unless the Court has any other questions. Go ahead and reserve. Thank you. Thank you, Your Honor. James Wagoner on behalf of Lexington. I would like to point out that there are three independent grounds on which the judgment can be affirmed, any one of which is sufficient. In logical order, they go the auto exclusion, the subsidence exclusion, and the other insurance clauses. The other insurance clause issue I would submit is the simplest way to affirm the judgment because these two other insurance clauses are non-conflicting. I'll get back to that in a minute. What I would like to do is address the subsidence exclusion first. The subsidence exclusion is very clear that refers to earth movement and it has a phrase, by any cause whatsoever, any earth movement. The Wyatt case was decided for the first time in the appellee's reply brief. It's a case from Minnesota that basically says the earth movement exclusion only applies when it's a earthquake or a massive type of land movement. That is not California law. So if the, just so that I understand, if the pump had been turned on, you know, other than the, you know, all the booms go out, but then if they were actually doing that and then would your argument be No, the reason why, that's getting back to the auto exclusion, by the way, but the reason why it wouldn't matter is because the use of the pump on or off wasn't a cause of the accident. You have to look, when you're asking ourselves the question, what is meant by the phrase arising out of, there's the notion of long-posed damages. That's what a liability policy is for. It's long-posed damages. And what does that liability arise out of? That liability did not arise out of the operation of the pump or the moving of the boom. The liability arose out of the parking of the concrete pumper truck the day before or hours before, I think it was, with one of the outriggers on soil that was uncompacted, that was found by the CalOcean to be the cause of the accident. That was the problem. And sure, it's a small area, maybe the size of this bench, but earth, but it says, the exclusion says, any cause whatsoever. And I would submit that there's numerous cases, if you, because the briefing, the reply brief that went a little beyond the opening brief, but there's numerous cases that say the subsidized exclusion applies, say, when a house settles because the soil has not been properly compacted. I would submit to the court to take a look at the Blackhawk Corporation case, which basically says, yes, a subsidized exclusion applies to houses settling when the contractor didn't compact the soil. There's also the Carlsbad case in which the landslide was caused by negligence of the city in letting its water pipes leak. So it's not a situation where the exclusion is limited to just natural forces. The exclusion applies to any kind of earth movement whatsoever, quote-unquote, and that includes man-made causes or causes that contributed to the negligence of the city. Now, recall, this is a liability policy, as a liability policy is focused on the conduct of third persons for which the law imposes liability. And the law can only impose liability when there's some fault there, typically, or in the case of strict liability, which is not what we have here. But the focus of a liability policy is on the liability of the third person. So when you look to what is meant by the subsidized exclusion, the context of the- It seems like they parked in the wrong spot. That's exactly right. They parked in the wrong spot, that's the negligence, and the case law is clear that negligent parking is a negligent use. Whether you negligently park in such a way that it rolls downhill and rolls over a child, whether you negligently park in such a way that you're halfway out in the street and someone's hit by a passing car, negligent parking is a use of a vehicle. So you're saying that would be covered by the auto exclusion in the Lexington policy? Exactly, Your Honor. Exactly, Your Honor. That's what the auto exclusion is for, excuse me, that's what an auto policy is for, is to cover negligence arising out of the operation of a vehicle. Operation includes use, that's what the negligence was in this case. Well, Mr. Wagner, subsidence, as I'm reading the exclusion, means earth movement of any kind whatsoever, you're right there, and then it has a series of examples, none of which it seems to me include the force of any other cause than the earth itself, maybe when it's called freezing, it seems to me that it's falling away, caving in, eroding, flowing, tilting, or other movement of land, all of these examples seem to be the land moving from some natural cause. And Your Honor, I think that needs to be interpreted in the context of existing case law. Caving in is the particular language that we're looking at here, and let me just offer the court the possibility that, let's just say a flood, three or four inches of rain in a few hours, on uncompacted soil, to the point where that soil, if it's uncompacted more in one spot than another, caves in. That's the mere weight of the rain. So mere weight causing caving in is something that's an excluded cause. Well, wouldn't your policy be more unambiguous if it said, the policy that subsidence exclusion applies regardless of the cause of the movement? Wouldn't it be more unambiguous then? I'd have to write that out and try to dwell on that question, but I would submit in response to Your Honor's question. Well, I mean, I'm sort of building on Judge Baez. Judge Baez said he's looking at it, and he's saying that seems to be just without, it seems to be instances where nothing's been done to the soil prior to the subsidence. And if you had something in there that said subsidence exclusion applies regardless of the cause of the movement, that would include someone doing something to the, so. Yeah. Let me remind the court that the city of Carlsbad case makes it clear that exclusion need not be perfectly drafted. It need only be conspicuous, plain and clear. We can't companies hire linguists from Harvard to draft all these things perfectly. The question is, as Her Honor mentioned. Why you? Because you wouldn't want to pay for your insurance then, Your Honor, because it would be way too expensive. Does it make a difference that you're both insurance companies and you both draft these things as opposed to? Well, there are cases, by the way, that point out that when the dispute is between insurance companies, the rules of ambiguity don't apply. You just look to the intent. I could cite those cases by this afternoon if the court is interested. There's about five California Supreme Court cases. One of them, I recall, is Mission versus Felt, F-E-L-D-T, 62 counts second, as I recall. There's numerous cases that say that when it's just two insurance companies, you skip the rules of narrow construction, that kind of stuff. You look to what the intent is. The intent here, when you look at the- So if it were the deceased family and the injured parties that were arguing for coverage, would they have a better chance to prevail against someone here than you two against each other? They would have other rules from which they could argue, Your Honor. I would agree with that. Those rules don't apply here. Because in this case, they've all been paid off, correct? Correct. And it didn't reach- it didn't- the full amount of the policy of Wausau wasn't expended, right? Correct. And there was an excess policy over that anyway. That even if- assuming the Lexington policy doesn't apply, there's still an excess policy that was north of the Wausau policy. But the settlement didn't even get into excess. Did not. Correct. Okay. Absolutely correct. Tell me why the auto exclusion applies. This was a truck that was not moving, that was set up without rigors, that was really pumping concrete. Why does the auto exclusion apply? Because it was negligent- the vehicle was negligently parked, Your Honor. You can have a vehicle negligently parked to cause a loss even if it's not moving at all. And so a vehicle doesn't have to be moving to be a cause of an accident. So let's say that the- we have the auto exclusion, then you have the exception to the exclusion for operation. And I know you say that's not applicable. But let's say it was applicable. Then we're getting to the excess insurance. And I think the argument that Wausau makes is that excess insurance clauses are disfavored in California law, and it's not applicable here. That is a gross over-generalization. Your Honor, if you look at the case law, there is not a single case out there, not a single case cited in the briefs, that says there were two non-conflicting other insurance clauses should be ignored. Non-conflicting is the key. These other insurance- So if my argument, if the Venn diagram, if there's an intersection, then your arguments have less force. You have to have two separate circles. You'd have to either have two different risks or the same risk covered under two different policies, which is possible. Two different risks would be, say it's a concurrent cause, one cause under an auto policy, one cause under a homeowner's policy or GL. That's not what we have here. Or if you have overlapping coverage, which we don't have here. These policies are mutually exclusive. But that's what he's arguing, that there's some overlap, right? On the operation. So your exception to the overlapping with the WSSOC policy. It's identical, Your Honor. If you hold the two clauses up and look at them, they actually mirror each other. Whatever is excluded from the Lexington policy by virtue of the definition of mobile equipment and the exception is covered under the WSSOC policy and vice versa. So you're saying the operation exception to your exclusion or exclusion to your exception, whatever it is, is that the operation piece that you'll cover under certain circumstances is excluded from the WSSOC policy? Yes, because take the food truck case. In the food truck case that he's referring to, there was grease on the stove in the food truck while the food truck was going down the road. So that grease was a part of the mobile equipment. It was a food truck. And so there you have a situation where you have the Venn diagrams, where you have two causes, one covered under one policy, one covered under the other, and they both contribute to the accident. That's not this case. Here, the trial judge in the state court case and the court of appeal both said the operation of the pump is not what caused the accident. The pump was not operating. And even if it was, even if we say hypothetically it was, there was no negligence in the operation of the pump. Again, the phrase arising out of connotes law-imposed liability. Well, is it negligent to park the pump in the wrong place? The pump wasn't parked in the wrong place. It could, assuming that... Well, the vehicle was parked in the wrong place. But the vehicle, when you park the vehicle in the wrong place, that's an auto-related risk, because you're parking it. Just like parking a vehicle without the handbrake on, it rolls down and runs over a kid. That is a negligent parking. If you park the vehicle in such a way, I think one of the cases we cite where they left the children in it. One of the children got in the car and moved the shift lever, and then it rolled backwards on another child. That's negligent parking. That's covered under an auto-type policy. But getting back to the other insurance clauses, which again, and I think this argument demonstrates the point I made at the outset that, and this is a very spirited argument, I appreciate the effort the Court has put into reviewing the record. The simplest way to affirm the judgment is to look at the other insurance clauses, because they are non-conflicting. And non-conflicting other insurance clauses, there's not a single case, and there's hundreds and hundreds of California cases that deal with other insurance clauses, not a single one says that we're going to take two non-conflicting clauses and ignore them and prorate the risk. There's not a single case. If this Court were to do what Wausau proposes, it would be the first case that would do that. So if the other insurance clause or excess insurance clause in the Lexington policy is enforceable, then it would say even if the operation exclusion were applicable here, even if the injury was caused by the operation of the pump, you wouldn't be responsible because there's the Wausau policy. Right. And recall that this is what's referred to in the cases as a narrowly drawn excess only clause. It's not an absolute saying, if there's any other insurance, our insurance is excess. This is very narrow and it says, if there's any other insurance arising out of the use of an auto, this is excess. Those narrowly drawn clauses, I believe the case is Hartford v. Travelers, which is cited in the brief. Would you repeat that, Mr. Wagner? This clause says, if there's other insurance, there's no coverage. You said something, you qualified it. Repeat that. Yes, if it arises out of, I don't have it in my notes here, it says this insurance is primary except where the loss arises out of the use of an auto to which exclusion A2 or whatever it is does not apply. And that narrowly drawn excess only language has never been held by any court in California to amount to being in conflict with another clause in auto policy such as the Wausau policy, which says I'm primary. And so I would urge the court to consider carefully that not a single California case has ever said two non-conflicting other insurance clauses should be ignored and the loss prorated. That would be a precedent that the California courts have been dealing with other insurance clauses since the 1940s. I, a long time ago, thought I was going to write a book on this and that's the first chapter I started on. And I read hundreds of cases, not a single one does that. I have one quick question for you. If the panel, let's, this is hypothetical, but if the panel were to find that summary judgment should not have been granted to your client, do we need to remand the case back to the district court or could we enter judgment in Wausau's favor? You'd have to remand it for further proceedings. There was no discovery done. We want to do additional discovery and many of the questions that Wausau has raised, for instance, this judicial notice request that we want to go back and look at the geo soil settlement. A lot of issues have been thrown in here that are sort of factual issues that need to be explored further. But it's not a case that summary judgment should have ever been granted to Wausau. And there may even be an issue of fact here because if we're going to try to, if we're going to retry the issue that was tried in the state court and ask ourselves, what was the cause of this accident? And if Judge Phillips is correct that she does not bound by that one part of the, of Judge Meyer's decision in the state court, then fine. Then who is going to try that case? Because Judge Phillips certainly can't try that case on summary judgment. She has to try that case after with evidence, including Mr. Seville, the Kaloshek investigator. Okay. Thank you for your argument. Thank you very much for your time. Thank you. Thank you. In my couple of minutes, I'd like to address a couple of issues very quickly. There has been some discussion about the complementary nature of these two policies. And what the Lexington policy and the Wausau policy does is cover different and separate risks. And looking at the language that the court was looking at, Lexington's policy excludes losses arising out of the use of the auto, except there's an auto, there's an operations exclusion, or exception to that exclusion, which operations exception to the exclusion, which gives back coverage for losses arising out of the use of what's called mobile equipment. And mobile equipment is defined as, as the pump. Phillips determined that the pump includes the boom because that's preparatory. So you, what you have is you have- So then the excess insurance though says, with respect to that little slice, we're only excess insurance. Well, when you read, when you read that, and I, and I will briefly read it, excess insurance through the Lexington policy is excess over insurance where the loss arises out of the maintenance use, maintenance use of auto, aircraft autos, watercraft, not subject to exclusion G of their policy. Exclusion G of their policy is the auto exclusion with the operations exception. So when Mr. Wagner says that these are, this is not an escape clause, this is exactly an escape clause. It doesn't say all risks, it just says there's one risk. I mean, the cases, as I looked at them, where the California Supreme Court struck, or the California court struck them down, it was, if there's any other insurance for anything, then we're not liable. And the court said, no, you can't have that because then you have two each is excess. But this is very narrow. Yeah, and it's very narrow. It only covers where they have an auto exclusion, they have an exception to the exclusion, and with respect to that exception, they're looking, they're saying they're excess. What's wrong with that? Because, because that, they're now saying that we are going to be excess insurance to a risk that we've already determined we're going to cover. They, they, they cover. Is that what all other insurance clauses are? I mean, it would have to be something that you had agreed to cover, or you wouldn't say we're excess on that? Well, I just see my time's up. Can I answer? Thank you. Please do. The cases that, that Lexington are talking about are cases where you've got two CGL carriers. Typically, you have two, two carriers of the same type of insurance covering the same type of risk. And if one's already in there, the other's going to be excess. You don't have that one that covers the transportation risk, one that specifically, Lexington, covers the operations risk, and then it has another insurance clause that says, sorry, we're taking that back. We mean to cover your operations, but really we're not. And so anytime there's a loss covering your operations, that arises out of an auto, which we agree that we're going to cover through the operations exception to the auto exclusion, we're going to take it back. That's unfair. Okay. Thank you. Okay. If there are no other questions, I... There don't appear to be. Thank you both for your argument. This matter will stand submitted.
judges: Callahan, Bea, Ikuta